# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BARBARA FISHER,

        Plaintiff,        :        Case No. 3:04-cv-418

        -vs-        :        Chief Magistrate Judge Michael R. Merz

PERMA-FIX OF DAYTON, INC.,

        Defendant.         :

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This case is before the Court on Motion of Defendant Perma-Fix of Dayton, Inc., for Partial Judgment on the Pleadings (Doc. No. 18). Perma-Fix seeks dismissal of Plaintiff's Fourth Claim for Relief on the grounds that it fails to state a claim upon which relief can be granted under the citizen suit provisions of the Clean Air Act.

The parties have unanimously consented to plenary magistrate judge jurisdiction in this case and it has been referred under 28 U.S.C. §636(c). Hence the undersigned is authorized to decide the instant Motion.

The parties agree on the standard for deciding a Rule 12(c) motion: in ruling on a motion for judgment on the pleadings, the Court must accept all the factual allegations of the complaint as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F. 2d 1233, 1235 (6th Cir. 1991)(citing *Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51, 61 S. Ct. 418, 85 L. Ed. 2d 577 (1941)). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F. 2d 601, 605 (6th

Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *EEOC v. J. H. Routh Packing Co.*, 246 F. 3d 850, 851 (6th Cir. 2001).

The disagreement between the parties is well focused. Plaintiff's Fourth Claim for Relief alleges that Perma-Fix "has allowed [hazardous air pollutants] and other noxious emissions to escape into the surrounding community" which "endanger the health, safety and welfare of the public, and cause unreasonable injury or damage to property" (Motion, Doc. No. 18 at 3, quoting Complaint, Doc. No. 1 at ¶36.) Such emissions are alleged to be in violation of Ohio Administrative Code §3745-15-07(A) which reads in pertinent part:

> The emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, odors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance.

The parties agree that §3745-15-07 is a part of Ohio's State Implementation Plan, commonly referred to as a "SIP," and therefore is incorporated into federal law.

The citizen suit provisions of the Clear Air Act are codified at 42 U.S.C. §7604 and provide in pertinent part:

> any person may commence a civil action on his own behalf– (1) against any person . . .who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter.
> . . .

42 U.S.C. §7604(f) defines "emission standard or limitation under this chapter" to mean, to the extent relevant to this case, a "schedule or timetable of compliance, emission limitation, standard of performance or emission standard," or "any other standard, limitation, or schedule . . . established under any . . . applicable State Implementation Plan."

2

The core of Defendant's argument is that O.A.C. §3745-15-07(A) does not qualify under 42 U.S.C. §7604(f) because

> It does not objectively limit the quantity, rate, or concentration of emissions, nor does it otherwise impose any schedule or timetable of compliance. . . . Because the regulation employs such indefinite qualifying language as "unreasonable injury or damage" and "endanger the [health, safety, or welfare of the] public," it is virtually impossible . . . to determine objectively whether this provision has been violated.  In short, Section 3745-15-07 imposes no objective performance standard or limitation whatsoever.

(Motion, Doc. No. 18 at 5-6.)

Defendant relies on *Helter v. AK Steel Corp.*, 1997 U.S. Dist. LEXIS 9852 (S.D. Ohio, 1997)(Beckwith, J.), which is directly in point.  In dismissing a citizen suit Clean Air Act claim which relied on O.A.C. §3745-15-07, Judge Beckwith held

> Courts that have considered the issue have concluded that violations of vague emissions prohibitions, like that contained in O.A.C. § 3745-15-07, are not subject to redress by means of a citizen suit. Section § 7406(a)(1) of Title 42 authorizes citizen suits for "violation of (A) an emission standard or limitation . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." The courts have concluded that that citizen suit provision and its counterpart under the Clean Water Act authorize only suits to enforce specific quantifiable standards and limitations. See, e.g., *Satterfield v. J.M. Huber Corp*., 888 F. Supp. 1561, 1566-67 (N.D. Ga. 1994)(objective, numerical standards are susceptible to citizen suit enforcement, while general nuisance standards are not).
>
> The Court finds no authority for a different interpretation of the "standard or limitation" language of the CAA's citizen suit provision. Plaintiffs have cited *Save Our Health Organization v. Recomp of Minnesota*, 37 F.3d 1334 (8th Cir. 1994). That decision is inapposite, however, inasmuch as the odor nuisance restrictions at issue included limitations by "odor units." Id. at 1336. The nuisance regulation at issue in this action, O.A.C. § 3745-15-07, contains no specific standard or limitation for an odor nuisance or for any other form of nuisance. The Court concludes, therefore, that Plaintiffs have not stated a CAA claim based upon O.A.C. § 3745-15-07 upon which relief may be granted.

*Id*. at *50-51.

Plaintiff disputes *Helter*'s authority, referring to it as "a single, highly suspect case that other local federal courts have refused to follow and the underpinning of which has been rejected by the U.S. Supreme Court."  (Memorandum in Opposition, Doc. No. 19 at 8).

Plaintiff argues that there is

> Circuit Court authority explicitly holding that SIP odor provisions that are far more 'subjective' than those at issue here **are** [emphasis sic] federally enforceable by citizens.  *See Concerned Citizens of Bridesburg v. City of Philadelphia*, 843 F. 2d 679, 717 (3rd Cir. 1988)(citizen's complaint seeking to enforce odor law constituted a "cognizable federal claim despite the fact that a determination of an odor violation was based on "individual inspector's sensing the violation through his own sense of smell.")

*Id*. at 8.  However, no such holding appears at page 717 of Federal Reporter Second; in fact, the last page of the *Bridesburg* opinion is page 683.

Plaintiff next argues that the United States Supreme Court "has rejected the reasoning underlying *Satterfield"* [*v. J.M. Huber Corp*., 888 F. Supp. 1561 (N.D. Ga. 1994)].  *See PUD No. 1 of Jefferson County and City of Tacoma v. Washington Dept. of Ecology*, 511 U.S. 700 (1994)."  (Memorandum in Opposition, Doc. No. 19 at 9.)  *Jefferson County*, however, is not a citizen suit to enforce the Clean Water Act, but rather an attempt by the City of Tacoma to set aside **state** regulation.

Plaintiff asserts that *Jefferson County* has been directly applied to citizen suits under the Clean Water Act in *Northwest Envt'l. Advocates v. City of Portland*, 56 F. 3d 979 (9th Cir. 1995).  In that case the Ninth Circuit reversed itself and applied *Jefferson County* to uphold citizen suit jurisdiction to enforce water quality conditions in an NPDES permit.  It distinguished other case law:

> When this Court and other courts have held that citizens may not enforce water quality standards under § 505(a)(1), they addressed

4

> standards that were not included in a NPDES permit. *Oregon Natural Resources Council v. U.S. Forest Service*, 834 F.2d 842 (9th Cir.1987) (suit to enforce water quality standards allegedly breached by nonpoint sources, which are never regulated by NPDES permits); *McClellan Ecological Seepage v. Weinberger*, 707 F.Supp. 1182, 1200 (E.D.Cal.1988) (finding no citizen suit jurisdiction existed, because "a state water quality standard can constitute an effluent standard or limitation enforceable under section 505 only if it has been incorporated into an NPDES permit"); *Montgomery Envtl. Coalition Citizens Coordinating Comm. on Friendship Heights v. Washington Suburban Sanitary Comm'n*, 607 F.2d 378, 381 (D.C.Cir.1979).

*Id*. at 989, n. 11.

Plaintiff relies on the unpublished decision in *Cornett v. Welding Alloys, U.S.A.*, Case No. 02-42-DLB (E.D. Ky, November 26, 2003). Judge Bunning concludes *Helter* is no longer good law because it relies on *Satterfield v. J. M. Huber Corp.*, 888 F. Supp. 1561 (N.D. Ga. 1994), which in turn relied on *Northwest Envtl. Advocates v. City of Portland,* 11 F. 3d 900 (9th Cir. 1993), which the Ninth Circuit later reversed. In addition to relying on the Ninth Circuit authority, the *Satterfield* court made the following observation:

> A common law nuisance "standard," of the type plaintiffs rely on is purely subjective. It would not comport with the intent of Congress to allow a citizen suit to proceed based on alleged violations of a vague, non-objective standard where the permit holder is in compliance with the specific emission limitations of its permit which were set to meet national ambient air quality standards. See Wilder v. Thomas, 854 F.2d 605, 613-614 (2nd Cir. 1988); United States v. Solar Turbines, Inc., 732 F. Supp. 535, 539 (M.D. Pa. 1989). Thus, the court finds that plaintiffs' Count II should be dismissed as it contains allegations of violations of a subjective standard. Plaintiffs must allege objective standards under the citizen suit provision of the Clean Air Act. See 42 U.S.C. § 7604(a) (allowing suits for violations of emission standards or limitations or violations of permit conditions).

888 F. Supp. at 1567.

Plaintiff also relies on Judge Weber's decision in *United States v. A.K. Steel Corp.*, Case No. 1:00-cv-530 (S.D. Ohio January 3, 2003), which allowed the State of Ohio, proceeding under the

5

citizen suits provision of the Clean Water Act, to enforce public nuisance standards. Judge Weber considered *Helter*, but did not find himself bound by it.

In its Reply Memorandum, Perma-Fix claims that

> Plaintiff's response is based on a fundamental mischaracterization of PFD's main argument. PFD's motion is *not* predicated on the argument that "an 'objectivity' or 'specificity' requirement" should be artificially engrafted onto's the Act's "emission standard or limitation" prerequisite for bringing a citizen suit.

(Reply Memorandum, Doc. 20 at 1.) However, the principal case on which Perma-Fix relies – *Helter* – and the underlying case on which *Helter* relies – *Satterfield* – both seem to be about precisely that concern, to wit, that the public nuisance standards in the Ohio and Georgia pollution regulation schemes are not "objective." And despite its protestations that its concern is not "objectivity," Perma-Fix argues at length in its Reply Memorandum about precisely this point. See, e.g., p. 4 ("But this so-called "limitation" has no parameters."); p. 5 ("...nothing in Section 3745-15-07 identifies the 'quantity, rate or concentration' of emissions that are prohibited."); p. 5 ("Section 3745-15-07 of the Ohio Administrative Code contains none of the objective terms or specific rules necessary to constitute an 'emission standard or limitation' under the Act.")

Perma-Fix also attempts to turn Plaintiff's citations of law against her by relying in the Reply on *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F. 2d 332 (6th Cir. 1989). There the Sixth Circuit opined:

> MEPA [Michigan Environmental Protection Act] does not impose the sort of specific requirements for emission standards or limitations that are enforceable by the CAA. Instead, it is a state statute that provides *de novo* review in state courts, allows the state courts to determine any adverse environmental impact, and to take appropriate measures. Michigan courts are not bound by any state administrative finding, or any federal law. Even though the federal government may determine that a plant is not in violation with either state or federal environmental laws, Michigan courts are still empowered to determine whether the standards applied by the federal government are appropriate and if not, determine whether the plant would meet

6

> any more stringent standards selected by the Michigan courts. In sum, MEPA creates a state environmental common law that is unaffected by federal law, and creates an independent state action that is unaffected by anything that happens in the federal sphere of government.

*Id*. at 341. While this passage implies that the deciding court believes Clean Air Act "emission standards or limitations" must be more specific than prohibitions on public nuisances, it gives no reasons for that conclusion.[1]

The Court concludes from review of all the authority cited by both parties that its decision on the instant Motion is not controlled by authority. There is no Sixth Circuit precedent directly in point and the two prior decisions of this Court point in opposite directions.

Nor is the underlying rationale in *Satterfield* persuasive. While the *Satterfield* court purports to rely on the intent of Congress, no expression of that intent in the legislative history is cited. Judge Beckwith relies on the same rationale, but her opinion in *Helter* also does not cite to the legislative history. While there may be legislative history which would be useful, neither of the parties here has cited to its in their motion papers.

The Court is accordingly thrown back on first principles. In interpreting a statute a court should:

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then

> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

---

[1] This passage is part of an opinion holding that an action under the MEPA was not properly removed to federal court because the Clean Air Act did not completely preempt the MEPA.

7

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169.  The evident purpose of the citizen suit provision is to provide an additional remedy for pollution in the hands persons other than the designated regulators.  As a remedial statute, §7604 should be interpreted broadly.  The language of the statute does not include any limitation to "objective" or quantifiable emission standards.  While Perma-Fix is concerned about opening the "floodgates" to litigation based on Plaintiff's interpretation, it fails to point to any flood of litigation under public nuisance theories in the state courts.  Nor are federal judges less able to decide nuisance claims on a case-by-case basis than state judges would be.

In sum, Perma-Fix has not established that a citizen suit to enforce O.A.C. §3745-15-07 is beyond the authority created by Congress in 42 U.S.C. §7604.  Defendant's Motion for Judgment on the Pleadings is denied.

January 27, 2006.

s/ **Michael R. Merz**
Chief United States Magistrate Judge